UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JESUS CAMACHO, surviving spouse of Stacey Camacho, and LeJEAN NICHOLS, as Administratrix of the Estate of Stacey Camacho,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONWIDE MUTUAL INSURANCE COMPANY,<br><br>Defendant. | CIVIL ACTION FILE<br><br>NO.: |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, JESUS CAMACHO, surviving spouse of Stacey Camacho, and LeJEAN NICHOLS, as Administratrix of the Estate of Stacey Camacho ("Plaintiffs"), sue Defendant, Nationwide Mutual Insurance Company ("NATIONWIDE"), and allege:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Jesus Camacho is the surviving spouse of Stacey Camacho and a resident of the State of Georgia. Plaintiff, LeJean Nichols, is the Administratrix of the Estate of Stacey Camacho and a resident of the State of Georgia.

2. Defendant, NATIONWIDE, is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Ohio.

3. NATIONWIDE is an insurance company authorized to do business in the State of Georgia, and is doing business as an insurance company in the State of Georgia. Process may be served on NATIONWIDE through its registered agent, Herbert Chestnut, 180 Cherokee St., N.E., Marietta, GA 30060, Cobb County, Georgia.

4. NATIONWIDE has been properly served with process in this action.

5. This Court has jurisdiction over this action under 28 U.S.C. §1332 because this action is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of costs and interest.

6. Venue is proper in this Court.

## BACKGROUND

7. On July 3, 2005, in Gwinnett County, Georgia, Seung C. Park ("PARK") drove a 1998 Chevrolet van through a red traffic light signal and

collided with an automobile driven by Stacey Camacho.  PARK was driving the van while intoxicated.

8. Stacey Camacho died on July 5, 2005, as a result of injuries from the motor vehicle collision with PARK.

9. At all times material, PARK was a named insured policyholder on a policy of insurance issued by NATIONWIDE, policy number 77 10 P 456486 (the "Policy").  The Policy had limits of liability for bodily injury liability coverage of $100,000.00 for one person's bodily injury, including death, and $300,000.00 for each occurrence.

10. The 1998 Chevrolet van driven by PARK at the time of the July 3, 2005, collision was insured under the Policy.

11. On July 3, 2005, PARK negligently operated the Chevrolet van listed on the NATIONWIDE policy and caused a motor vehicle collision that resulted in the death of Stacey Camacho.

12. On or about December 23, 2005, PARK was criminally charged with homicide by vehicle and failure to obey a traffic control device.

13. After the July 3, 2005, automobile collision that resulted in the death of Stacey Camacho, claims for damages for wrongful death, funeral and burial

expenses, conscious pain and suffering and medical expenses were made against PARK ("the Camacho Claims").

14. The Camacho Claims were covered under the policy of automobile liability insurance referenced above, issued by NATIONWIDE to PARK.

15. The Camacho Claims were properly reported to NATIONWIDE. The defense of the Camacho Claims was tendered to NATIONWIDE, who undertook the defense of the claims on behalf of its insured, PARK.

16. On March 2, 2006, attorney Charles McAleer sent letters to NATIONWIDE stating that he represented the surviving spouse and estate of Stacy Camacho and requesting insurance policy information.

17. In a letter dated March 28, 2006, NATIONWIDE claims representative Ms. Sharon Wilson stated that before McAleer's representation, she had made an offer of "the $100,000.00 liability limits in exchange for a general release" for "the estate claim and the wrongful death claim of Stacey Camacho."

18. On April 18, 2006, attorney Charles McAleer sent a letter to NATIONWIDE containing an offer to settle all claims against PARK arising from the death of Stacey Camacho with a limited liability release under O.C.G.A. § 33-24-41.1 in exchange for payment of the $100,000 policy limits, subject to other

conditions, including acceptance of the offer by delivery of payment within ten days.

19. In the April 18, 2006, letter, Mr. McAleer stated that the offer was "open for your acceptance for ten (10) days; after that time, your opportunity to settle for the proposed amount is withdrawn, with the claim resolved only by verdict in an amount rendered by a jury."

20. NATIONWIDE did not deliver payment of the $100,000.00 policy limits to Mr. McAleer within ten days of April 18, 2006.

21. On May 1, 2006, Sharon Wilson, claims representative for NATIONWIDE, sent a letter to Mr. McAleer stating that NATIONWIDE's "investigation shows that a limited release is not applicable in this case" and that NATIONWIDE was "prepared to issue the settlement check upon acceptance of a general release and documentation that your client was legally married to the deceased at the time of this accident."

22. NATIONWIDE did not accept the offer of settlement of the Camacho Claims contained in the April 18, 2006, letter from Mr. McAleer.

23. On July 25, 2006, a lawsuit was filed against PARK by Plaintiffs for damages arising from the motor vehicle collision. The lawsuit was filed in the

State Court of Fulton County, State of Georgia, Civil Action Number 06-EV-000714D.

24. After a jury trial on the Camacho Claims, judgment was entered in favor of Plaintiffs and against PARK in the total amount of $5,830,000.00 ("the Judgment"). A copy of the Judgment is attached as Exhibit A.

25. The Judgment against PARK is final and accruing interest.

26. All but $100,000.00 of the Judgment is in excess of the insurance coverage maintained by PARK, and NATIONWIDE has refused to pay any part of the excess.

27. PARK has assigned to Plaintiffs all of PARK's assignable rights and claims against NATIONWIDE. Plaintiffs sue NATIONWIDE as the assignees of PARK's causes of action. A copy of the assignment is attached as Exhibit B.

28. All conditions precedent to the right to bring this action have occurred or been excused.

## COUNT I – NEGLIGENCE AND BAD FAITH

29. Plaintiffs incorporate by reference the allegations of Paragraphs 1 – 28 as if fully set forth herein.

30. Under all the circumstances of the case, the Camacho Claims could have been settled by NATIONWIDE and should have been settled by

NATIONWIDE had it acted with ordinary care and good faith, and given equal consideration to the financial interests of its insured, PARK.

31. Nonetheless, the Camacho Claims were not settled and instead a lawsuit was filed by the surviving spouse and estate of Stacey Camacho seeking a judgment against PARK.

32. As a result of the liability policy issued by NATIONWIDE, and because of the relationships of the parties to that contract, NATIONWIDE owed to its insured, PARK, a duty to use ordinary care and good faith in the handling of the Camacho Claims.

33. This duty owed by NATIONWIDE to its insured included but was not limited to the following obligations:

    a) To give equal consideration to the financial interests of its insured;

    b) To protect the interests of the insured in defending against the claims of persons injured by the insured;

    c) To act reasonably and use that degree of care which is exercised by an ordinarily prudent insurer under the same or similar circumstances;

d) To do what it can to effectuate the settlement of claims against its insured;

e) To settle a claim against the insured if an ordinarily prudent insurer would consider choosing to try the case created an unreasonable risk;

f) To refrain from taking an unreasonable risk on behalf of its insured;

g) To attempt in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear;

h) To adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies;

i) To properly represent to claimants and insureds relevant facts or policy provisions relating to coverages at issue;

j) To acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies;

k) To inform its insured of all settlement opportunities and overtures; and

l) To handle the entire claim in accordance with applicable laws, statutes, governmental and industry regulations that establish the obligations and standard of conduct for liability insurance companies handling claims, as well as NATIONWIDE's own policies.

34. NATIONWIDE breached its duties to its insured in the handling of the Camacho Claims by:

a) Failing to handle the Camacho Claims with ordinary care, in good faith, and with equal consideration for the interests of its insured;

b) Placing its financial interests superior to the interests of its insured in the handling of the Camacho Claims;

c) Failing to settle the Camacho Claims where the insured's liability was clear, the damages in excess of the available policy limits and when it was on notice that it had an opportunity to settle the case;

d) Failing to settle the Camacho Claims against its insured when it could have and should have done so, had it given equal consideration to the interests of its insured;

e)   Failing to inform the insured of all settlement opportunities and overtures;

f)   Negligently and carelessly adjusting and defending the Camacho Claims;

g)   Failing to protect the interests of the insured in defending against the Camacho Claims;

h)   Failing to act reasonably and use that degree of care which is exercised by an ordinarily prudent insurer under the same or similar circumstances;

i)   Failing to do what it could to effectuate the settlement of the Camacho Claims against its insured;

j)   Failing to settle the Camacho Claims against the insured when an ordinarily prudent insurer would consider choosing to try the case created an unreasonable risk to its insured;

k)   Failing to refrain from taking an unreasonable risk on behalf of its insured;

l)   Failing to attempt in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability had become reasonably clear;

    m)    Failing to adopt and implement procedures for the prompt investigation and settlement of claims for catastrophic losses such as the Camacho Claims;

    n)    Failing to properly represent to claimants and insureds relevant facts or policy provisions relating to coverages at issue;

    o)    Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies;

    p)    Failing to handle the entire claim in accordance with applicable laws, statutes, governmental and industry regulations that establish the obligations and standard of conduct for liability insurance companies handling claims, as well as NATIONWIDE's own policies.

35. As a proximate result of these breaches by NATIONWIDE, the Camacho Claims did not settle within the policy limits, and instead a lawsuit was filed against its insured, PARK, who became personally liable to the Plaintiffs in the amount of $5,830,000.00.

36. NATIONWIDE negligently or in bad faith failed to settle the Camacho claims within the policy limits, resulting in a judgment against its insured, PARK, in excess of the policy limits.

37. As a result of the breaches of duties to its insured and bad faith, NATIONWIDE is liable for the full amount of the Judgment plus interest and other damages.

38. Plaintiffs claim special damages in the amount of the Judgment, plus interest at the legal rate, and special and general damages in an amount to be determined by the enlightened conscience of a jury at trial for the foreseeable harm resulting from NATIONWIDE's actions.

## COUNT II - ATTORNEY FEES AND EXPENSES OF LITIGATION

39. Plaintiffs incorporate by reference the allegations of Paragraphs 1 - 38 as if fully set forth herein.

40. NATIONWIDE acted in bad faith, has been stubbornly litigious and has caused the Plaintiffs unnecessary trouble and expense, which makes it liable under OCGA §13-6-11 for attorney fees and other expenses of litigation.

WHEREFORE, Plaintiffs pray for and demand the following:

(a) That process issue and Defendant be served as provided by law;

(b) That Plaintiffs have and recover an award of compensatory damages against Defendant including special damages in the amount of the judgment of $5,830,000.00, interest on said judgment, other damages in amounts to be proven at trial, and to have judgment entered thereon;

(c) That Plaintiffs have and recover an award for expenses of litigation, including reasonable attorneys fees, against Defendant, pursuant to OCGA §13-6-11 and have judgment entered thereon;

(d) That all costs be taxed against Defendant;

(e) That Plaintiffs have such other and further additional relief as the Court deems just and appropriate under the circumstances; and

(f) That Plaintiffs have a trial by jury as to all issues.

Respectfully submitted this 13th day of September, 2011.

*/s/ Darrell W. Hinson*
Darrell W. Hinson
Georgia Bar No.: 356789
SWOPE, RODANTE P.A.
191 Peachtree Street
Suite 3300
Atlanta, Georgia 30303
404-736-3729 (Telephone)
404-736-3736 (Facsimile)
darrellh@swopelaw.com
Attorney for Plaintiffs